United States District Court
Middle District of Florida
Tampa Division

**PURCELL BRADLEY,**

    *Plaintiff,*

v.                                                      NO. 8:14-CV-2266-T-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

### Order Affirming Commissioner's Decision

This is a case under 42 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of the Social Security Administration denying Purcell Bradley's claim for supplemental security income. He seeks reversal; the Commissioner, affirmance. The Court incorporates the record summarized by the Administrative Law Judge ("ALJ"), Tr. 21–27, and the parties, Doc. 20 at 1–4; Doc. 21 at 1–3, 7–8.

### Issue

Bradley presents one issue: whether the ALJ erred by failing to consider the August 4, 2012, consultative examination and its corroborative impact on the opinions of W. Martin Underwood, D.C.

### Background

Bradley was 46 on the date of the ALJ's decision. Tr. 26, 157. He last worked in March 2012. Tr. 198. He has a high-school education with a year of college and experience as construction worker, cement finisher, maintenance man and painter.

Tr. 198–99, 204–211, 245, 305. He alleged he had become disabled in March 2012 due to broken wrists (from falling off a ladder), back pain, leg problems, and vision issues. Tr. 34, 47–48, 157, 194, 198. He proceeded through the administrative process, failing at each level. Tr. 1–6, 16–27, 57–65, 67–73, 81–86. This case followed. Doc. 1.

## Consultative Evaluation

Bradley presented to a consultative examiner[1] at KLM Medical Services, LLC, in Tampa on August 4, 2012, for a consultative evaluation. Tr. 290. The consultative examiner summarized Bradley's reports of impairments (broken wrists, vision loss, and chronic back, neck, and leg pain). Tr. 290. The consultative examiner also summarized Bradley's reports of limitations ("sitting for 20 minutes due to his back, standing for 25 minutes due to his back and walking 1/2 block due to his back[,] … being able to lift 1–2 pounds due to his wrist and back," Tr. 291), and absence of them ("[h]e states [his vision loss] has not started to affect his ability to work," Tr. 290). The consultative examiner observed no palpable muscle spasms and charted his muscle strength except his hip flexion and extension, which Bradley refused due to severe pain. Tr. 292. The consultative examiner reported full (5 out of 5) muscle strength on the left and right side for his deltoids, biceps, triceps, wrist flexion, wrist extension, finger abduction, hand grip, ankle plantar flexion and ankle dorsi-flexion, and reduced (3 out of 5) muscle strength for hip abduction and adduction, and leg

---

[1] It is unclear who performed the evaluation because the only reference to the examiner is "T Kelly," the signature is illegible, and the evaluation contains no other identifying information like "M.D." Tr. 289, 294–95. Because both parties refer to the person as a doctor or physician, Doc. 20 at 3, 5; Doc. 21 at 6–7, the Court assumes "T Kelly" was a doctor and refers to him or her simply as the consultative examiner.

flexion and extension on both sides. Tr. 292–93. The consultative examiner observed he had fine motor skills, could dress and undress well, could rise from a sitting position without assistance, and with difficulty, could lift, carry and handle light objects, get up and down from the examination table, and squat and rise from that position. Tr. 293.

As to Bradley's broken wrists, the consultative examiner observed a decreased range of motion on the wrist joint at 20 degrees on all sides but full muscle strength and intact sensation, range of motion of the right hand within normal limits and good grip strength, flexion and extension of the left thumb within normal limits, but limited range of motion (60 degrees) preventing formation of a grip on the left side. Tr. 293. The consultative examiner stated, "There was no visible atrophy in both of the extremities and reflexes were within normal limits. The patient did have some difficulty secondary to pain in performing some of these maneuvers and therefore was not putting in his best effort." Tr. 293.

As to Bradley's back and leg pain, the consultative examiner observed he had back tenderness, a positive straight-leg raising test at 30 degrees bilaterally, reflexes within normal limits, and 3 out of 5 muscle strength in his hip and leg because of pain. Tr. 293. The consultative examiner stated, "The patient was cooperative; however, the pain was limiting his effort during the examination. … He did seem to be in distress upon lying down on the examination table." Tr. 293.

As to Bradley's vision, the consultative examiner found his "visual acuity and gross confrontation appeared normal with the visual fields slightly restricted on the right more than the left on gross confrontation." Tr. 293.

### ALJ's Decision

At step two,[2] the ALJ found Bradley has severe impairments of bilateral carpal fractures and lumbago (degenerative disc and joint diseases, or DDD and DJD), with obesity. Tr. 21. At step three, he determined Bradley's impairments, whether individually or in combination, did not meet or medically equal the severity in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 22. After stating he had considered the entire record, he found Bradley has the residual functional capacity to perform less than a full range of light work because, although he has no postural limitations related to balancing, stooping, or crawling, (1) he can never climb ladders, ropes or scaffolds; (2) he can only occasionally climb ramps and stairs, kneel, and crouch; (3) his handling is limited to frequently with his non-dominant hand; (4) he must avoid even moderate exposure to extreme cold, humidity, and hazards like machinery and heights; and (5) he must be able to sit or stand at will as long as he is not off task more than ten percent of the work period. Tr. 22. He found Bradley could

---

[2]The Social Security Administration (SSA) uses a five-step sequential process to decide if a person is disabled, asking (1) if he is engaged in substantial gainful activity; (2) if he has a severe impairment or combination of impairments; (3) if the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1; (4) given his residual functional capacity (RFC), if he can perform any of his past relevant work; and (5) given his RFC, age, education, and work experience, if there are a significant number of jobs in the national economy he can perform. 20 C.F.R. § 416.920(a)(4)

perform no past relevant work. Tr. 25–26. Based on the testimony of a vocational expert, he found there are jobs Bradley can perform (information clerk, telemarketer, and assembler) and therefore is not disabled. Tr. 26–27.

The ALJ included the consultative examination as an exhibit to his opinion, Tr. 31, but did not cite it or summarize it, *see generally* Tr. 16–27.

## Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.*

## Analysis

To be eligible for supplemental security income, a claimant must demonstrate that he is disabled. 20 C.F.R. § 416.912. A claimant is disabled if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The claimant has the burden of persuasion through step four of the five-step process. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). At step four, an ALJ must evaluate the claimant's ability to perform his past

relevant work in light of his residual functional capacity. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The residual functional capacity is an assessment based on all evidence of a claimant's remaining ability to work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

An ALJ must consider all relevant record evidence in making a disability determination. 20 C.F.R. § 416.920(a)(3). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations omitted). An ALJ's determination may be implicit, but the "implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983).

An ALJ has a heightened duty to discuss medical opinions. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 (11th Cir. 2015). He must evaluate every medical opinion, regardless of its source, and must "state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); 20 C.F.R. § 416.927(c). An ALJ must give considerable weight to a treating physician's opinion unless he shows good cause for not doing so. *Phillips*, 357 F.3d at 1240. If an ALJ disregards the opinion, he must clearly articulate his reasons. *Id.* at 1241. Substantial evidence must support those reasons. *Id.* Those standards do not apply to a treating physician's opinion the

6

claimant is disabled because that opinion is legal rather than medical. *Lewis*, 125 F.3d at 1436.

A treating source is a physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the treatment or evaluation required for the medical condition. 20 C.F.R. § 416.902. An ALJ may consider evidence from other sources, including a medical source not considered an "acceptable medical source" like a chiropractor. 20 C.F.R. § 416.913(d)(1). The opinion of a one-time examining physician is not entitled to great weight and may be discredited by other record evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). But an ALJ must articulate the basis for rejecting a medical opinion even if it is not entitled to great weight because it comes from a non-treating physician or otherwise. *McClurkin*, 625 F. App'x at 962–63.

Bradley argues the ALJ erred by failing to consider the consultative evaluation which, when combined with the opinion of chiropractor Dr. Underwood, establishes the impact of his lumbar, cervical, and bilateral hip impairments on his ability to work. Doc. 20 at 4–5. He argues the ALJ did not mention the consultative evaluation "even though it was the most thorough description by a doctor of [his] physical limitations." Doc. 20 at 5. The Commissioner responds the ALJ reviewed the consultative evaluation along with all the other medical evidence. Doc. 21 at 6. She

observes the consultative examiner did not provide any limitation in the evaluation. Doc. 21 at 7. She argues as a one-time examining source, the consultative examiner's opinion is not entitled to controlling weight and, citing *Dyer*, contends he was not required to specifically refer to it in his decision. Doc. 21 at 7. She argues the ALJ found the record did not support Bradley's alleged limitations, citing the recovery of his right arm without arthritis and good grip, neurovascular status, and range of motion on that side. Doc. 21 at 7–8. She observes the ALJ considered Dr. Underwood's treatment records, including his opinion that temporary strain/sprain could cause Bradley's symptoms and his notations that Bradley repeatedly reported feeling better with treatment. Doc. 21 at 8 (citing Tr. 23, 310, 315, 320–22, 324–37). She argues the ALJ was not required to give Dr. Underwood's opinions any weight or articulate reasons for discounting his opinion and, regardless, Bradley failed to show how his opinions could have affected the outcome regarding the impact of his lumbar, cervical, and bilateral hip impairments. Doc. 21 at 9.

The Commissioner's contention the ALJ was not required to refer to the consultative examination because he is not required to refer to every piece of evidence under *Dyer*, *see* Doc. 21 at 7, fails because the consultative examination included medical opinions. *See McClurkin,* 625 F. App'x 962–63 (ALJ may not implicitly reject medical opinion because court cannot determine reasons and rejecting Commissioner's reliance on *Dyer* because it referred to a duty to discuss general objective evidence, not an ALJ's heightened duty to discuss medical opinions). But here, while the ALJ did not specifically reference or cite the consultative evaluation,

he considered it with the other medical evidence in the case and did not reject any medical opinions from the consultative examiner, implicitly or otherwise. The consultative evaluation contained no functional limitations beyond those Bradley reported, which were consistent with those he conveyed at the hearing and the ALJ expressly evaluated (his sitting and standing limitations and his ability to lift only 1 to 2 pounds). Tr. 24–25, 41–43, 291. The ALJ observed Bradley's maneuverability was limited at 15 to 20 degrees flexion and extension, which is consistent with the consultative examiner's findings. Tr. 23, 294. The ALJ incorporated his inability to grip with his left hand by limiting handling to frequently with his non-dominant hand. Tr. 22, 293.

Bradley's argument concerns his lower-body limitations. The consultative examiner, however, expressed no opinion whether the difficulties observed in the evaluation (squatting, getting up and down from the examination table, hip and leg strength exercises) would affect his ability to work or whether they would persist for longer than 12 months. Citing no particular record, the ALJ found the evidence supported his need to change positions between sitting and standing when desired but observed "demonstrable testing failed to justify more limitations that [sic] the undersigned had provided in the residual function capacity." Tr. 23. Bradley does not explain how the ALJ's limitations regarding never climbing ladders, ropes or scaffolds and only occasionally climbing ramps and stairs, kneeling, and crouching are inconsistent with the consultative evaluation.

Bradley suggests the ALJ should have given more weight to Dr. Underwood's opinions in light of the consultative evaluation. He states "Dr. Underwood's records and opinion relate to the impact of [his] lumber, cervical and bilateral hip impairments have on [his] ability to work" and contends "the ALJ does not consider this at all." Doc. 20 at 5. But the ALJ expressly considered Dr. Underwood's treatment records and adequately explained why—aside from observing he is not an acceptable medical source under 20 C.F.R. § 416.913(a) as a chiropractor—he rejected Dr. Underwood's opinions: (1) "he himself also raised the alternative possibility of mere (temporary) sprain/strain as the cause of the symptoms"; (2) there was no evidence of any cord blockage or lower extremity derangement, including from his own examination; (3) Bradley's other medical records showed no lower limb loss of motion; and (4) "the only likely basis for finding lower body losses in sitting, walking and standing would be extreme pain symptoms."[3] Tr. 23 & n.1, 25, 310 (listing current diagnosis of "chronic recurrent lumber spine disc condition v. sprain/strain" and observing conservative treatment goals will provide quicker return to normal activity). The observations of the consultative examiner do not affect the ALJ's

---

[3]The ALJ found Bradley's statements concerning the intensity, persistence, and limiting effects of his symptoms only partially credible. Tr. 24–25. Bradley does not challenge the ALJ's credibility findings; regardless, he gave Bradley "the benefit of every uncertainty" as to his "sitting/standing proscriptions." Tr. 25. Moreover, the ALJ did not base his credibility findings on any failure of Bradley to have previously reported pain or limitations, *see* Tr. 25, which might have made the failure to mention the consultative examination more important.

reasoning in evaluating Dr. Underwood's opinions on his lower body limitations and substantial evidence supports his decision to discount them.[4]

## Conclusion

The Court **affirms** the Commissioner's decision denying Bradley's claim for benefits and directs the clerk to enter judgment in favor of the Commissioner and close the file.

**Ordered** in Jacksonville, Florida, on March 8, 2016.

*PATRICIA D. BARKSDALE*
*United States Magistrate Judge*

c:   Counsel of Record

---

[4] Bradley cites a March 12, 2013, letter from Dr. Underwood drafted after the ALJ's January 29, 2013, decision containing the opinion he was completely incapacitated due to lumbar problems. Doc. 20 at 4; Tr. 12, 27. He submitted the letter to the Appeals Council, which determined the letter related to a later time. Tr. 2. He does not raise any argument concerning the Appeals Council's consideration of this evidence.

11